IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CODY J. W.,

                        Plaintiff,

       v.                             Civil Action No.
                                    3:21-CV-0515 (GLS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                 MELISSA DELGUERCIO, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINKSY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          NATASHA OELTJEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which he has

applied.  The matter has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3.  For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from

the application of proper legal principles and is supported by substantial

evidence.

I.    BACKGROUND

Plaintiff was born in March of 1982, and is currently forty years of

age.  He was twenty-eight years old as of January 31, 2011, the date upon

which he allegedly became disabled, and thirty-three years old the time of

his application for benefits in September of 2015.  Plaintiff stands six feet in

height, and weighed between approximately one hundred and seventy and

two hundred and seventy-nine pounds at the relevant times.  Plaintiff lives

in a house in Dryden, New York, with his grandmother.

Plaintiff reports having dropped out of high school, but he later

earned his GED and attended a semester and a half at a local community

college.  He had previous work as a pizza delivery driver, and as a furniture

mover and delivery worker.

Plaintiff alleges that he suffers primarily from anxiety and panic attacks, although he also reports a diagnosis of kleptomania related to his compulsion to steal objects, particularly toys.  He also acknowledges that he has a substance use disorder, although he testified to having been sober for two years by the time of his most recent hearing with the ALJ. Relevant to his current applications, plaintiff has undergone outpatient addiction therapy and attends counseling for his anxiety and panic attacks. Plaintiff has treated for his conditions during the relevant time period with Syracuse Recovery Services, Cortland County Mental Health Clinic, the Beacon Center, and CMA Primary Care.

Plaintiff claims to suffer primarily from anxiety, panic attacks, and a compulsion to steal items.  He was formerly addicted to opioids and marijuana but has been sober for two years.  Plaintiff does not take any medications for his mental conditions, out of fear of the potential for addiction.  He does, however, use medical marijuana, which reportedly helps his anxiety.  According to plaintiff, groups of people cause him to have panic attacks, so he does his shopping during hours when less people are at the store.  He tries to limit shopping because of his compulsion to steal items, fearing that he will go to jail if he is arrested

again.  Plaintiff reports that he was able to work in the past by doing jobs

that did not require interaction with many people, but the lack of oversight

from others also resulted in him stealing from his employers.  Plaintiff cares

for his grandmother, who is in poor physical health and suffers from the

early stages of dementia.  He can prepare meals and do all the chores

around the house.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of

the Social Security Act, respectively, on September 8, 2015.  In support of

his applications, he claimed to be disabled due to a social anxiety disorder

and a panic disorder with agoraphobia.

A hearing was conducted on February 2, 2018, by Administrative Law

Judge ("ALJ") Kenneth Theurer, to address plaintiff's applications, at which

plaintiff did not appear due to an apparent lack of transportation.  Following

that hearing, ALJ Theurer issued an unfavorable decision on February 27,

2018.  Plaintiff appealed that decision, resulting in an order issued on June

12, 2019, by the Social Security Appeals Council ("Appeals Council")

remanding the matter for a new hearing and new decision based on the

ALJ's failure to provide the plaintiff with notice of a change in the time of his

hearing that complied with the requirements of the agency's internal policies.

Pursuant to that remand order, ALJ John P. Ramos held a telephone hearing on July 16, 2020, at which time testimony was taken from both plaintiff and a vocational expert. Following that hearing, ALJ Ramos issued an unfavorable decision on July 29, 2020. That opinion became a final determination of the agency on March 2, 2021, when the Appeals Council denied plaintiff's request for review of the ALJ's decision.

B. The ALJ's Decision

In his decision, ALJ Ramos applied the familiar, five-step sequential test for determining disability. At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. The ALJ next found at step two that plaintiff suffers from medically determinable impairments that impose more than minimal limitations on his ability to perform basic work functions, including an anxiety disorder and drug and alcohol addiction. The ALJ additionally found that plaintiff's alleged impairment of kleptomania is not a medically determinable impairment.

At step three, ALJ Ramos examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed,

presumptively disabling conditions set forth in the Commissioner's

regulations, specifically considering Listing 12.06.

ALJ Ramos next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at all exertional levels, but with the following

additional limitations:

> the claimant retains the ability to understand and
> follow simple instructions and directions, perform
> simple tasks with supervision and independently,
> maintain attention/concentration for simple tasks and
> regularly attend to a routine and maintain a schedule;
> the claimant is able to interact with supervisors on an
> occasional basis throughout the work day after
> learning their job duties from an instructional or
> demonstration lesson; the claimant is able to work in
> proximity to coworkers but should only have brief
> occasional interaction with them; the claimant should
> have no contact with the public; the claimant is able
> to make decisions directly related to the performance
> of simple work and handle usual work place changes
> and interactions associated with simple work; the
> claimant should work in a position where he is not
> responsible for the work of or required to supervise
> others; the claimant should work in a position with
> little change in daily work processes or routine.

ALJ Ramos went on to step four to conclude that plaintiff is unable to

perform his past relevant work.  Proceeding to step five, the ALJ elicited the

testimony of a vocational expert regarding how plaintiff's limitations would

impact the occupations that he can perform and concluded, based on the

vocational expert's testimony, that plaintiff remains able to perform

available work existing in significant numbers in the national economy,

citing as representative examples the positions of mail clerk, price marker,

and garment sorter.  Based upon these findings, ALJ Ramos concluded

that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on May 5, 2021.[1]  In support of his

challenge to the ALJ's determination, plaintiff argues that the ALJ failed to

comply with the applicable regulations and the law of the Second Circuit

when rejecting the opinion from physician's assistant ("PA") Kelly Leonard.

Dkt. No. 12, at 10-16.

Oral argument was conducted in this matter, by telephone, on May

17, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

     The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's sole argument in support of his challenge to the Commissioner's determination is that the ALJ erred in his assessment of the opinion from physician's assistant ("PA") Kelly Leonard.  Because plaintiff's applications in this matter were filed in 2015, the procedures for weighing opinion evidence found in 20 C.F.R. §§ 404.1527 and 416.927 apply to his claim.  Under those regulations, if the source is a treating

physician, an ALJ is required to consider whether that opinion is entitled to controlling weight, or, if not, what degree of weight any such medical opinion is otherwise entitled to by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence or explanation supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).

Pursuant to 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1), medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s). . . ." 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1). Opinions from medical sources who are not classified as acceptable medical sources under the regulations are to be considered "using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, [although] not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. §§ 404.1527(f)(1) and 416.927(f)(1). "The adjudicator generally should explain the weight given to opinions from these sources or

12

otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2). Relevant to this case, for claims filed before March 27, 2017, licensed physician assistants are not considered to be acceptable medical sources. 20 C.F.R. §§ 404.1502(a)(8), 416.902(a)(8).

On a medical source statement form dated July 8, 2020, PA Leonard opined that plaintiff has "no useful ability to function"[2] in the areas of completing a normal workday or workweek without interruptions from psychologically based symptoms, dealing with normal work stress, and using public transportation; he is "unable to meet competitive standards"[3] in the areas of maintaining attention for two hour segments, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, performing at a consistent pace without an unreasonable number of rest periods, responding appropriately

---

[2]    This is defined as "an extreme limitation, mean[ing] your patient cannot perform this activity in a regular work setting."  AT 582.

[3]    This is defined as "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  AT 582.

to changes in a routine work setting, interacting appropriately with the

general public, maintaining socially appropriate behavior, and traveling in

unfamiliar places; he is "seriously limited but not precluded"[4] in the areas of

remembering work-like procedures, understanding and remembering very

short and simple instructions, and getting along with coworkers or peers

without unduly distracting them or exhibiting behavioral extremes; and he is

"limited but satisfactory" in the areas of carrying out very short and simple

instructions, maintaining regular attendance and being punctual within

customary tolerances, sustaining an ordinary routine without special

supervision, asking simple questions or requesting assistance, accepting

instructions and responding appropriately criticism from supervisors, and

being aware of normal hazards and taking appropriate precautions.

Administrative Transcript ("AT") at 582.[5]  In two brief sentences, ALJ

Ramos explained that, in his view, PA Leonard's opinion was entitled to

lesser weight than the opinions from Dr. Amanda Slowik and Dr. A.

Chapman, noting that "the opinion consists of general checkbox format

without sufficient explanation to support the extreme limitations indicated

---

[4]     This is defined to mean the patient's "ability to function in this area is seriously
limited and less than satisfactory, but not precluded in all circumstances."  AT 582.

[5]     The Administrative Transcript is found at Dkt. No. 9, and will be referred to in this
decision as "AT ___."

14

therein."  AT 22.

Because PA Leonard is not an acceptable medical source as defined in the applicable regulations, her opinion was not entitled to controlling weight, despite the fact that she reports having a treating relationship with plaintiff.  Moreover, plaintiff's argument that the ALJ erred in failing to articulate how he considered each of the regulatory factors when affording lesser weight to PA Leonard's opinion is not supported by the governing regulations.  Rather, as was discussed above, when assessing an opinion from a source who is not an acceptable medical source, the ALJ was required only to explain his rationale or to "ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2).  While the explanation provided by ALJ Ramos for discounting PA Leonard's opinion is only marginally illuminating at best, a reading of his decision as a whole provides a basis for meaningful review.

In his decision, the ALJ observed that plaintiff was noted by treatment providers on many occasions to have a normal or appropriate mood or affect, normal insight, no suicidal or homicidal ideation, and as being alert, cooperative, and not in distress.  AT 20-21.  The ALJ discussed the findings from Dr. Amanda Slowik's consultative examination, which showed

that plaintiff has intact memory, a cooperative attitude, an adequate manner of relating and social skills, fluent speech, intact concentration and attention, a full range of affect, and fair insight, although his judgment was noted to be poor and he had an anxious mood.  AT 21.  The ALJ also recounted plaintiff's reported daily activities, including his ability to go out alone and drive, count change, follow instructions, perform chores, and remember things.  AT 21.  The ALJ additionally discussed his reasons for affording great weight to the opinions of nonexamining state agency medical consultant Dr. A. Chapman and treating therapist Cindy Horn, LMHC, and for assigning partial weigh to the opinion from Dr. Slowik.  AT 21-22.  The ALJ's summation of the evidence before him, and his assessment of that evidence, which he specifically found to suggest that plaintiff has the ability to perform unskilled work activity, is sufficient to allow me to understand the ALJ's rationale for finding that PA Leonard's opinion was entitled to only lesser weight.  Specifically, the ALJ's discussion of the evidence as a whole makes it abundantly clear that the ALJ found that opinion to be inconsistent with the overall treatment and other opinion evidence, regardless of whether the ALJ stated as much explicitly.

Moreover, my review of the evidence assures me that the ALJ's

ultimate conclusion is supported by substantial evidence.  Although plaintiff alleges disability back to January 2011, there is very little insight into his condition prior to December 2017.  AT 407-420.  In December 2017, he was observed to have appropriate grooming and dress, fluent speech, direct eye contact, appropriate affect, an open attitude, rational thought process, intact memory, and good insight and judgment.  AT 445.  He was discharged from Syracuse Recovery Services in March 2018 because he refused to stop using marijuana due to its efficacy in relieving his anxiety.  AT 515.  In January and July 2019, plaintiff was observed to have a normal mood, normal affect, intact memory, and grossly intact judgment and insight, and was alert and oriented.  AT 538, 544.  In August 2019, he was observed to be cooperative, asking for help, with an anxious and depressed mood, an appropriate affect, and coherent and logical speech.  AT 558.  It was noted that he talked nonstop throughout session and was preoccupied with obtaining toys to the point of diagnostic obsession, his memory was intact, his attention span and concentration were normal, and he had insight into the fact he is obsessed with toys, but reported he was unable to resist taking them and had impaired impulse control.  AT 558.  In October 2019 and January 2020, plaintiff's mental status exams showed no abnormalities, and, at the latter appointment, he reported that he did not

17

wish to take any medications because he is able to cope with his stressors by attending therapy sessions.  AT 551, 568.  In January 2020, plaintiff reported some increased depression due to the ending of his long-term relationship, but he was progressing in developing self-control with regard to his impulses to steal, such that he had not stolen anything in the past few months.  AT 548.  As the ALJ found, these observations simply do not support the level of restriction in PA Leonard's opinion.

Because the ALJ's discussion of the evidence in the decision provides a sufficient indication of his rationale for affording lesser weight to PA Leonard's opinion, any reliance by the ALJ on the fact that the opinion was rendered on "a general checkbox" form, to the extent that could be construed as error,[6] would nevertheless be harmless error in this case because the ALJ provided other rationale for his assessment of this opinion beyond the form on which the opinion was rendered.  *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) (noting that there is no rule "that the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a

---

[6]    Although the Second Circuit in *Colgan* specifically assessed the opinion of a treating physician, its rationale arguably also applies to sources other than treating physicians, given the court's statement that the "general approach to agency factfinding . . . is a functional and not a formulist one."  *Colgan*, 22 F.4th at 361.

check-box form"); *see also Schillo v. Kijakazi*, 31 F.4th 64 (2d Cir. 2022)

(affirming that an ALJ can reject the opinion of a treating physician

rendered on a check-box form if that form contains no explanation and the

opinion is not otherwise supported by the source's treatment records).  In

addition to the ALJ's assessment of the other evidence, as was already

discussed, it is clear that the ALJ did not rely merely on the form of the

opinion, but rather on the fact that PA Leonard failed to provide "sufficient

explanation to support the extreme limitations indicated therein."  AT 22.

Notably, the only explanations provided in the form are a few handwritten

statements that the plaintiff experiences frequent panic attacks, does not

handle stress well, has maladaptive coping behaviors, has compulsions to

steal, has chronic fatigue, and takes medication that can interfere with his

ability to concentrate, although she noted that neither suboxone nor

medical marijuana caused side effects.  AT 582-83. However, there is no

indication that these statements are anything more than a reiteration of

plaintiff's subjective reports, which the ALJ found to not be fully supported

by the record; notably, there are no treatment records from PA Leonard in

the record to corroborate these explanations,[7] and the other evidence in

---

[7]    Of note, although the record does not appear to contain treatment records from PA Leonard, despite her statement that she treated plaintiff for two years, plaintiff has not argued that this represents any failure to develop the record.  Because there is

the record is inconsistent with those explanations and PA Leonard's assessment, as was already discussed. The ALJ's statement that PA Leonard did not provide sufficient explanation to support the extent of the limitations she opined is therefore supported by substantial evidence and provides another basis to support the ALJ's conclusion that her opinion is entitled to lesser weight.

Based on the foregoing, I recommend that plaintiff's arguments be rejected, and the ALJ's decision be affirmed.

IV.   SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 15) be

---

nothing to suggest that the ALJ was derelict in his duty to assist the plaintiff in developing the record, I find that any such argument should be deemed waived in this case. *See* AT 34 (indicating that, in response to the ALJ's questioning at the 2020 hearing regarding whether the medical evidence was complete, plaintiff's representative responded that that although "the record looks pretty thin for a remand here," he had requested additional information from facilities on "multiple occasions," and was "not expecting anything else").

GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     May 24, 2022
               Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge